DE LAGE LANDEN FINANCIAL SERVICES, INC., Appellant

v.

The URBAN PARTNERSHIP, LLC, Appellee.

Superior Court of Pennsylvania.

Argued March 8, 2006.

Filed July 12, 2006.

Michael J. McCaney, Jr., Blue Bell, for appellant.

Mark Pinnie, Atlanta, Ga., for appellee.

BEFORE: JOYCE, LALLY–GREEN, and KLEIN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, De Lage Landen Financial Services, Inc., appeals from the order entered on August 19, 2005, granting preliminary objections filed by defendant/Appellee, The Urban Partnership, LLC ("TUP"). We affirm.

¶ 2 In this case, Appellant alleged that TUP breached a contract. Appellant also alleged that the contract contains a clause whereby TUP agreed to submit to the jurisdiction of Pennsylvania courts. TUP filed preliminary objections, alleging lack of personal jurisdiction in Pennsylvania. In support of this claim, TUP argued that the signature of a TUP representative on

the contract was a forgery. TUP supplied an affidavit from Norman G. Olsen III, the alleged signer of the contract, along with supporting documentation.

¶ 3 The trial court ordered the parties to complete discovery on the forgery claim within 45 days. Appellant sent discovery requests to TUP, but TUP did not respond. Appellant did not move to compel TUP's compliance, and the trial court did not insist on compliance *sua sponte*. By the end of the 45-day period, the only material evidence on the forgery claim was Olsen's affidavit and supporting documentation. The court relied on the affidavit, granted the preliminary objections, and dismissed the complaint for lack of personal jurisdiction.

¶ 4 The trial court set forth the factual and procedural history of the case in greater detail, as follows:

Plaintiff De Lage Landen ("DLL") is a Michigan corporation with corporate headquarters in Wayne, Chester County, PA. Defendant is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business in Atlanta. Plaintiff is in the business of financing leased office equipment. Plaintiff alleges that Defendant entered into a Lease Agreement with Plaintiff for the rental of office equipment on or about August 17, 2002 and then defaulted on February 1, 2004 after making seventeen (17) payments on the Lease to Plaintiff.

On or about July 11, 2002, Defendant entered into a Rental Agreement with Docuteam, Inc. for office equipment. *See:* Defendant's Exhibit "A." The Rental Agreement is signed by "Norman G. Olsen" as an owner. Defendant made monthly payments to Docuteam. *See:* Olsen Affidavit. In the fall of 2002 Docuteam advised Defendant that it was changing its "billing provider" to De Lage Landen and directed Defendant to remit payments to a new address. *See:* Olsen Affidavit. On December 15, 2003 Docuteam faxed to Defendant a copy of the De Lage Landen Lease Agreement. *See:* Defendant's Exhibit "B." The Lease is allegedly signed by "Norman Olson" on behalf of Defendant; there is no signature on behalf of De Lage Landen. By correspondence dated April 26, 2004 Defendant informed Plaintiff that the signature was not that of Mr. Olsen or anyone who works for Defendant. *See:* Defendant's Exhibit "C".

### Procedural History

On February 14, 2005, Plaintiff filed an action for breach of contract regarding the Lease Agreement. On March 29, 2005, a "competent adult" served the Complaint on Defendant in person in Atlanta, Georgia. On April 22, 2005, Defendant filed preliminary objections raising lack of personal jurisdiction. Defendant only alleged that it had not consented to jurisdiction. However, Plaintiff filed an Answer to Defendant's Preliminary Objections pointing out that Defendant had consented to jurisdiction in Pennsylvania in paragraph 9 of the Lease. Based on the language of the Lease, we issued an Order on June 1, 2005 overruling Defendant's preliminary objections due to Defendant's consent to jurisdiction. Defendant immediately filed a Motion to Reconsider Preliminary Objection to Personal Jurisdiction.

In the Memorandum of Law filed on May 27, 2005, which we had not seen prior to drafting our Order filed on June 1, 2005, Defendant alleged that the signature on the Lease on behalf of Defendant was a forgery. On June 14, 2005 Defendant filed a Memorandum in Support of the Motion for Reconsideration. On June 20, 2005 Plaintiff filed an An-

swer and Memorandum in Opposition to Defendant's Motion for Reconsideration. In light of the new allegation of forgery, we vacated the Order on June 22, 2005 and directed the parties to produce a record on the issue by August 8, 2005. By correspondence dated August 1, 2005, Defendant submitted the Affidavit of Norman G. Olsen III, along with Exhibits "A" through "D." On August 5, 2005, Plaintiff filed its Memorandum of Law in support of personal jurisdiction. Our Order of August 19, 2005 sustaining Defendant's objections was based on the entire record produced by both parties prior to the deadline set in the June 22, 2005 Order. However, Plaintiff submits on appeal that we erred by relying on the record produced by the parties and by not requiring Defendant to answer Plaintiff's interrogatories sent to Defendant on June 30, 2005.

N.T., 10/25/2005, at 1–3.[1]

¶ 5 Appellant raises two issues on appeal:

I. Where on a contract containing a personal jurisdiction clause a party in preliminary objections claims forgery of its signature offering only an affidavit in support thereof, did the trial court err in finding the affidavit sufficient evidence to sustain preliminary objections on the claim of forgery?

II. Did the trial court err in holding that the non-moving party on preliminary objections should be placed in the position of assuming a burden of producing evidence it does not control?

Appellant's Brief at 4.[2]

¶ 6 First, Appellant argues that the trial court accepted an unreasonably low measure of proof (the Olsen affidavit) in determining that the signature was forged.

¶ 7 "Our standard of review of an order of the trial court overruling [or granting] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *Mar–Eco, Inc. v. T & R & Sons Towing & Recovery, Inc.*, 837 A.2d 512, 514 (Pa.Super.2003). Those substantive legal standards are as follows:

When preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt. Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party. A defendant making a challenge to the court's personal jurisdiction has, as the moving party, the burden of supporting its objection to jurisdiction.

*King v. Detroit Tool Co.*, 452 Pa.Super. 334, 682 A.2d 313, 314 (1996) (citations omitted); *see also* Pa.R.C.P. 1028(c)(2) ("the court shall determine promptly all preliminary objections. If an issue of fact

---

1. On September 26, 2005, the trial court ordered Appellant to file a concise statement of matters complained of on appeal under Pa. R.A.P.1925. Appellant filed a timely concise statement on October 5, 2005, preserving the issues that it now raises on appeal.

2. Consent is a valid basis for obtaining personal jurisdiction. *Reco Equip., Inc. v. John*

T. *Subrick Contr., Inc.*, 780 A.2d 684, 687 (Pa.Super.2001), *appeal denied*, 567 Pa. 763, 790 A.2d 1018 (2001). Appellant seems to concede that the only basis for personal jurisdiction in Pennsylvania is TUP's consent. Appellant does not develop an argument that personal jurisdiction is proper on any alternative basis.

is raised, the court shall consider evidence by deposition or otherwise."). This Court set forth additional procedural rules as follows:

> Of particular significance in the instant case, is the rule that the mere allegation in preliminary objections that there is a lack of *in personam* jurisdiction over a defendant does not place a burden on the plaintiff to negate such allegations. When a defendant challenges the court's assertion of personal jurisdiction, that defendant bears the burden of supporting such objections to jurisdiction by presenting evidence. *Holt Hauling and Warehousing Systems, Inc. v. Aronow Roofing Co.,* 309 Pa.Super. 158, 454 A.2d 1131 (1983). [Footnote: The burden of proof only shifts to the plaintiff after the defendant has presented affidavits or other evidence in support of its preliminary objections challenging jurisdiction.] In *Holt Hauling,* our court instructed that when a fact issue is raised by preliminary objections regarding *in personam* jurisdiction, the court is to take evidence and may not reach a determination based upon controverted facts, even if the parties fail to provide such evidence themselves.

*Gall v. Hammer,* 420 Pa.Super. 512, 617 A.2d 23, 24 (1992).

¶ 8 The instant case involves an allegation of forgery. Generally, "when the issue of a forgery is raised, the [party

claiming forgery] has the burden of proving the existence of a forgery by clear and convincing evidence. Also, we note that because forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility." *In re Estate of Presutti,* 783 A.2d 803, 805 (Pa.Super.2001) (citations omitted).

¶ 9 Thus, the question becomes whether the Olsen affidavit and supporting documents provided clear and convincing evidence of forgery. As noted above, we bear in mind that: (1) TUP has the burden of proof; and (2) the evidence should be viewed in the light most favorable to Appellant as the non-moving party. *King; Presutti.*

¶ 10 The affidavit states, in relevant part, that Olsen signed a Partnership Program Agreement with Docuteam on July 11, 2002. Olsen Affidavit at ¶ 5. The signature on that agreement reads, "Norman G. Olsen."[3] Affidavit Exhibit A, R.R. 30a.

¶ 11 The affidavit further states that in the fall of 2002, TUP received notice that Docuteam had changed their billing provider to DeLage Landen. According to Olsen, TUP was reassured "that the terms and conditions of TUP's agreement with Docuteam would remain the same." Affidavit at ¶ 7. In December 2003, TUP asked Docuteam to replace its copy machine with a smaller machine. Docuteam rejected that request, stating that "it was contrary to the terms of our lease." *Id.* at ¶¶ 8–9.

---

**3.** We recognize that Mr. Olsen's handwriting on this document makes it difficult to determine whether the vowel before the final "n" is an "o" or an "e." Nevertheless, given that Olsen has averred that this particular signature is valid, we presume that it reads, "Olsen." We also note that underneath Mr. Olsen's signature is a space marked, "PRINT NAME." In this space are printed the words, "Norman Olson." The same style of printed handwriting appears in many other places on the document, including sections marked "Customer Billing Address" and "Equipment Description." Given the fact that the document originated as a fax from Docuteam to TUP, it would appear that someone other than Olsen filled out the agreement and faxed it to Olsen for his signature. It would also appear that in the process, that person misspelled Olsen's name in the "PRINT NAME" section. R.R. 30a.

At that point, Docuteam faxed a copy of the DeLage Landen Lease Agreement to TUP for the first time. *Id.* at ¶ 9.

¶ 12 The DeLage Landen Lease Agreement is dated August 17, 2002. R.R. 34a. According to Olsen, the disputed signature on that Agreement is misspelled as "Norman Olson." Olsen Affidavit at ¶ 14. After closely reviewing the disputed signature, it is unclear whether the final vowel is an "o" or an "e." R.R. 34a. Thus, it is unclear whether the disputed signature is misspelled.[4] Olsen also contends, however, that the disputed signature is a forgery because it omits the middle initial "G," which Olsen always uses when signing legal documents. Olsen Affidavit at ¶¶ 13–14. Indeed, the disputed signature does omit Olsen's middle initial. R.R. 34a.

¶ 13 Finally, for purposes of comparison, Olsen also supplied a copy of an authentic signature on a guaranty agreement that Olsen signed on behalf of TUP. Olsen Affidavit ¶ 15 & Exhibit D; R.R. 29a, 36a. That signature reads: "Norman G. Olsen III." *Id.* While we do not purport to be handwriting experts, the authentic signature is noticeably more stylized than the disputed signature, and it does contain the middle initial "G".

¶ 14 The trial court found the affidavit and supporting documentation to provide clear and convincing evidence of a forgery. We agree. Certainly, the quantum of evidence necessary to reach the "clear and convincing" standard will vary based on the specific circumstances of each case.[5] In the instant case, the Olsen affidavit went far beyond a mere averment that Olsen did not sign the DeLage Landen Lease Agreement. Rather, Olsen plausibly explained how he learned of the document and the forged signature for the first time through a fax transmission. He also explained how he signs legal documents with his middle initial, something the disputed signature lacks. Finally, he provided a sample signature which does vary noticeably from the signature on the Lease Agreement. While the trial court certainly could have asked for additional evidence before ruling on the forgery, we cannot conclude that the trial court erred by relying on the Olsen affidavit and supporting documentation. That evidence, standing alone, did provide clear and convincing evidence of forgery under the unique facts of this case.[6] Appellant's first claim lacks merit.

■ ¶ 15 Appellant's second issue is closely related to the first issue. Appellant argues that the trial court should have ordered TUP to produce additional proof

4. The DeLage Landen Lease Agreement is filled out in a printed handwriting style which is strikingly similar to the handwriting found on the original agreement between Docuteam and TUP. *See* R.R. 30a, 34a. Just like the Docuteam agreement, the DeLage Landen Agreement contains a section marked, "PRINT NAME." R.R. 34a. Just like in the Docuteam agreement, Olsen's name is misspelled as "Norman Olson." *Id.*

5. For example, if a corporate executive's signature was produced in crayon in a blocky, child-like printing style, a plausible argument could be made that the signature itself goes far toward establishing clear and convincing evidence of forgery. On the other hand, if the signature is spelled correctly, in pen, and bears a striking resemblance to an authentic signature, then additional evidence would most likely be necessary to establish clear and convincing evidence of forgery.

6. We note that we have found no legal requirement that a party alleging forgery must present a handwriting expert to support his claim. Indeed, our Supreme Court has held that fact-finders are free to disregard a handwriting expert's testimony, if they find contrary evidence from other laypeople to be more credible. *In re Estate of Cline*, 433 Pa. 543, 252 A.2d 657 (1969); *Porter's Estate*, 341 Pa. 476, 19 A.2d 731 (1941).

of forgery. Specifically, Appellant claims that the court should have ordered TUP to respond to Appellant's discovery requests on the forgery issue before ruling on the preliminary objections.

¶ 16 "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *McNeil v. Jordan*, 894 A.2d 1260, 1268 (Pa. 2006). In the instant case, the trial court gave the parties 45 days from June 23, 2005 (*i.e.*, on or about August 8, 2005) to develop a record on the forgery claim. Trial Court Opinion, 10/25/2005, at 4; Docket Entry 11. This order was consistent with Pa.R.C.P. 1028(c)(2), which provides that preliminary objections should be decided "promptly." The court astutely noted that Appellant could have conducted a deposition of Olsen within that 45–day period, but it chose not to do so. Trial Court Opinion, 10/25/2005, at 4. Instead, Appellant sent to TUP a rather technical request for production of documents on June 30, 2005. *Id.;* Docket Entry 13. The due date for a response was approximately one week before the trial court's deadline. When Appellant did not respond by the deadline, Appellant did not seek a motion to compel or an extension of time. Instead, Appellant wrote a letter to TUP reminding them that its responses were due. When the trial court's deadline arrived, Appellant simply argued that the Olsen affidavit was not sufficient to prove forgery.

¶ 17 Appellant argues that the trial court should have insisted that TUP respond to Appellant's discovery requests. While the trial court arguably had the power to do so, we see no abuse of discretion in its failure to do so. In short, we see no reason why the trial court should arbitrarily inject itself into the discovery process, particularly in the absence of a request from one of the parties. In the absence of a motion to compel, the trial court has no particular reason to believe that a party is anything other than satisfied with the way the discovery process is proceeding.

¶ 18 We agree with the trial court that Appellant could have obtained firsthand information from Olsen himself by noticing his deposition, but Appellant failed to do so. We also note that Appellant could have retained a handwriting expert to compare the signature on the Lease Agreement with the authentic signature that Olsen provided in his affidavit. Appellant suggests that a handwriting expert must compare the alleged forgery with at least 20 genuine signatures. Appellant's Brief at 13. While we have no basis to gauge the truth of this assertion, we simply note that Appellant could have tried to present evidence comparing the two signatures that it did have in its possession.

¶ 19 Appellant argues that it cannot be faulted for failing to produce evidence that it does not have. We agree with this proposition in the abstract; however, Appellant did not take advantage of various means of obtaining the information it needed. After a halfhearted discovery attempt, Appellant had no evidence to counter the Olsen affidavit. Appellant then gambled on an argument that the Olsen affidavit was insufficient to carry TUP's burden of proof. As noted above, TUP's evidence was clearly sufficient. We see no abuse of discretion in the trial court's handling of this discovery matter. Appellant's second claim fails.

¶ 20 Order affirmed.

¶ 21 JOYCE, J.: concurs in the result.