J-A19025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHARD JOHNSON & JANET JOHNSON, TRUSTEES OF THE RICHARD AND JANET JOHNSON TRUST DATED JULY 12, 2005 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN A. SLACK | |
| Appellant | No. 1189 WDA 2014 |

Appeal from the Order July 11, 2014
in the Court of Common Pleas of Erie County
Civil Division at No(s): 2010-12640

BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 12, 2015**

Appellant John A. Slack ("Appellant") appeals the July 11, 2014 order of the Erie County Court of Common Pleas entering judgment for Richard Johnson and Janet Johnson as Trustees of the Richard & Janet Johnson Trust ("Appellees") against Appellant in the amount of $221,443.24, plus statutory interest from September 1, 2006.  We affirm.

On September 1, 2006, IDC Ohio Holdings, LLC ("Ohio Holdings"), of whom Appellant was the sole member, purchased real property located at 201 West Plum Street in Edinboro, Erie County, Pennsylvania ("the Property"), from Mr. and Mrs. G. Allen Gick for $495,000.00.  That same day, Ohio Holdings sold the Property to the Richard and Janet Johnson Trust ("the Trust"), of which Appellees are trustees, for $850,000.00.  Also on

September 1, 2006, the Trust leased back the Property to Ohio Holdings by executing a 20-year triple net lease.  Appellant provided the Trust with a personal guarantee for the payment of Ohio Holdings' lease obligations, including the Property's property taxes ("the Guaranty").[1]

_____

[1] This personal guaranty is the subject of the instant litigation.  The Guaranty reads:

## PERSONAL GUARANTY

FOR VALUE RECEIVED, in consideration for and as an inducement to ("Lessor") to enter into that certain Lease, dated September 1, 2006, with IDC Ohio Holdings, LLC ("Lessee"). JOHN A. SLACK, the undersigned, on behalf of himself, and his legal representatives, heirs and assigns, guarantees the full performance and observation of all covenants, conditions and agreements therein provided to be kept, performed and observed by said Lessee, during the first five (5) years of said Lease (the "Guaranty Period") until IDC Ohio Holdings, LLC has a minimum of ten (10) operating Dairy Queen stores or unless the property is sold by Lessor.  The undersigned agrees that in the event of a default under the Lease by Lessee during the Guaranty Period, written notice of said default under the Lease by Lessee during the Guaranty Period, written notice of said default shall be presented to Guarantor, at which point Guarantor shall have fifteen (15) days to cure said default.  The validity of this guaranty and the obligations of the Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion or non-assertion by Lessor against Lessee of any of the rights or remedies reserved to Lessor pursuant to the provisions of the within Lease, during the Guaranty Period.  If any action be brought by Lessor against Guarantor hereunder to enforce the obligation of Guarantor hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the court.  The undersigned further agrees that this Guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of the Lease, during the

*(Footnote Continued Next Page)*

At or around the same time, another Appellant-controlled entity, IDC Ohio Management Company, LLC ("Ohio Management"), entered into a franchise agreement with Dairy Queen that allowed Ohio Management to open a Dairy Queen franchise on the Property, which it accordingly did and operated until November 2008.

In November 2008, Appellees learned that Dairy Queen had cancelled its franchise agreement with Appellant and that all Dairy Queen activities at the Property had ceased. Shortly thereafter, Ohio Holdings ceased rent payments to the Trust. Also at this time, Ohio Holdings ceased all property tax payments.

Appellant attempted to secure a release from the Guaranty by drafting, executing, and transmitting a release to Appellees. Appellees declined to execute the release. Instead, Appellees demanded payment of the unpaid rent and property taxes for the approximately three years remaining on the lease.

*(Footnote Continued)* ───────────

Guaranty Period, and that the undersigned shall execute, from time to time, such additional instruments as may be required by Lessor to cause this Guaranty to remain and continue in full force and effect during such renewal, modification and extension, during the Guaranty Period.

Appellant testified that he executed similar guaranties in multiple other, similar transactions wherein Ohio Holdings would purchase real estate, sell it to a third party, and then lease the same property back for the purpose of operating a Dairy Queen thereon.

The trial court conducted a bench trial on May 20, 2014, where it received as evidence the prior deposition testimony of Janet Johnson, Appellant, and William Springer, Ohio Management's operations manager from 2006 to 2008. Appellees presented uncontroverted evidence of $258,462.21 in damages, mitigated by their re-let of the Property to a third party following Appellant's default, for an aggregate loss of $151,998.51 over the 5-year term of the original lease. Appellees also presented evidence of re-letting expenses totaling $69,455.73, for a claimed total loss of $221,443.24. The trial court ruled in Appellees' favor and awarded $221,443.24 in damages.

Appellant timely filed a notice of appeal and filed a Pa.R.A.P. 1925(b) statement. The Rule 1925(b) statement of matters complained of on appeal alleged the Guaranty contained a condition subsequent that rendered the Guaranty unenforceable.[2] The 1925(b) statement further alleged that Appellant did not sign the Guaranty, and his signature thereon is a forgery. Finally, the 1925(b) statement alleged that Appellees failed to properly mitigate their damages, as required under the terms of the Guaranty, and that Appellees failed to prove their damages at trial.

---

[2] Appellant's 1925(b) statement is a 5-page, single-spaced document containing 23 separate paragraphs. Most of the 23 paragraphs consist of factual assertions, not claims of error.

J-A19025-15

The trial court filed a Pa.R.A.P. 1925(a) Opinion that incorporated its July 11, 2014 Order and Opinion.

Appellant raises the following four (4) claims for review:

1. Whether the trial court erred and committed an error of law and abuse[d] its discretion by not finding that the Personal Guaranty was conditional[?]

2. Whether the trial court erred as a matter of law and abused its discretion in determining that ". . . [Appellant] has offered no credible evidence to dispute the claimed damages["] and failing to find that the Personal Guaranty is void and unenforceable[?]

3. Whether the trial court committed an error of law and abused its discretion by not finding that the Appellee[s] failed to attempt or in fact did not mitigate the alleged damages pursuant to the terms and conditions of the Lease Agreement[?]

4. Whether the trial court commit[ed] an error of law or abused its discretion by not finding that the Appellees failed to prove the alleged damages of $258,462.21[?]

Appellants' Brief, p. 3.[3, 4]

This Court's standard and scope of review in an appeal from a non-jury verdict is as follows:

_____

[3] Appellees distilled the claims into the following single claim:

[1.] Did the trial court err as a matter of law in awarding [Appellees] $221,443.24 in liquidated damages for [Appellant's] breach of the duties owed to [Appellees] under the subject personal guaranty?

Appellees' Brief, p. 6.

[4] We reorder and discuss Appellants issues *infra* for ease of disposition.

- 5 -

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*J.J. DeLuca Co. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa.Super.2012) (citation omitted). Further,

[w]e will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

*Id.* (citation omitted).

Essentially, Appellant disagrees with the trial court's verdict in this matter, and predictably feels the trial court should have ruled in his favor. He claims the trial court erred by not finding that (1) the Guaranty was a forgery, (2) the Guaranty was conditional and no longer enforceable, (3) Appellees failed to mitigate their damages, and (4) Appellees failed to prove their damages. *See* Appellant's Brief, pp. 7-18. Appellant is incorrect.

## 1. *The Forgery Claim*

Appellant first claims the Guaranty was a forgery – that the Guaranty his counsel previously drafted differed from the one produced by Appellees, which he claims to have never signed. *See* Appellant's Brief, pp. 7-8. This claim lacks merit.

- 6 -

Generally, when the issue of a forgery is raised, the party claiming forgery has the burden of proving the existence of a forgery by clear and convincing evidence. Also, we note that because forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility.

*De Lage Landen Servs., Inc. v. Urban P'ship, LLC*, 903 A.2d 586, 590 (Pa.Super.2006) (internal quotations, citation, and brackets omitted).

Here, the question of whether Appellant provided clear and convincing evidence of forgery is easily answered: Appellant provided no documentation, expert testimony, or any other evidence beyond his own testimony to corroborate his claim that the Guaranty entered into evidence by Appellees and which bore Appellant's signature, was a forgery. The trial court rejected Appellant's testimony and the claim that the Guaranty was a forgery.[5] The competent evidence of record supports the trial court's conclusion. This claim fails.

## 2. *The Contractual Interpretation Claim*

Next, Appellant claims the Guaranty included a condition subsequent that occurred and relieved him of the Guaranty obligations. **See** Appellant's Brief, pp. 8-10. This claim also fails.

The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own

---

[5] **See** N.T. 5/20/2014 ("THE COURT: Then I'll be clear. I find your testimony incredible at this point.").

inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa.Super.2013), *reargument denied* (Feb. 4, 2014), *appeal denied*, 96 A.3d 1029 (Pa.2014) and *appeal denied*, 96 A.3d 1029 (Pa.2014) (quoting *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 509–10 (Pa.Super.2013)).

Appellant claims that the following Guaranty language created a condition whereby Appellant would be absolved of the requirements of the Guaranty upon the first of (1) the passage of five years, or (2) Appellant operating ten Dairy Queens, or (3) the sale of the Property by Appellees:

> . . . [Appellant] guarantees the full performance and observation of all covenants, conditions and agreements therein provided to be kept, performed and observed by said Lessee, during the first five (5) years of said Lease (the "Guaranty Period") until IDC Ohio Holdings, LLC has a minimum of ten (10) operating Dairy Queen stores or unless the property is sold by Lessor.

*See* Guaranty. Appellant argues the term "until" before the "has a minimum of ten (10) operating Dairy Queen stores or unless the property is sold by Lessor" indicates the parties' intent to create an obligation conditioned on the happening of either of those things. *See* Appellant's Brief, pp. 8-10. He

further maintains he operated ten Dairy Queens during the relevant time period.

Appellees do not contest that the Guaranty language created a classic condition subsequent. Instead, Appellees contend that the evidence presented did not prove the occurrence of one of the conditions, to wit, that Appellant operated a minimum of ten Dairy Queen restaurants.[6] **See** Appellees' Brief, pp. 11-16. Appellees are correct.

The pertinent evidence before the trial court consisted of the affidavit of John Slack and the deposition testimony of William Springer, Vice President of Operations for Ohio Management.[7] The real estate closing statements attached as exhibits to John Slack's affidavit, which he claimed evidenced operating Dairy Queen locations, indicated that Ohio Holdings purchased certain parcels of land. **See** Affidavit of John Slack, Exhibit 4. They do not show that Ohio Holdings operated Dairy Queens at these properties or even had the right to do so. Appellant did not produce franchise agreements with Dairy Queen or any other evidence – beyond his own testimony – that would have substantiated Appellant's claim that each

_____

[6] There is no allegation that the Lessor – Appellees – sold the Property, which they still owned at the time of trial.

[7] Appellees entered the transcript of William Springer's April 4, 2012 deposition into evidence at trial. **See** N.T. 5/20/2014, pp. 3, 47; Trial Exhibit 2.

of the locations was an operating Dairy Queen for the purpose of relieving Appellant of his obligations under the Guaranty's condition subsequent. In fact, William Springer's deposition testimony confirmed that Ohio Management only operated eight Dairy Queen restaurants in Ohio and Pennsylvania. *See* S.R.R., pp. 7, 10-16, 27-33. This evidence does not illustrate that Appellant ever operated ten Dairy Queen restaurants.[8]

Accordingly, Appellant's argument that he was relieved of any Guarantee obligations by the occurrence of the condition subsequent that Ohio Holdings operated ten Dairy Queens fails.

### 3. *The Failure to Mitigate Claim*

Appellant next claims that Appellees failed to mitigate their damages as required by the lease. *See* Appellant's Brief, p. 17. This claim also fails.

The trial evidence illustrates that Appellees attempted to, and in fact did, mitigate their damages by re-letting the Property to a Horton Foods franchise. As a result, during trial Appellees amended and reduced their claimed damages from $258,462.61 to the $221,443.24 that the trial court awarded, which included the amended rental loss figures and the costs

---

[8] Appellees make the further point that the evidence does not illustrate whether the Dairy Queen locations Appellant alleges to have operated were operated by Ohio Holdings or Ohio Management. *See* Appellees' Brief, pp. 14-16. While we appreciate the subtlety of Appellees' argument, because the evidence presented at trial failed to conclusively illustrate the operation of sufficient Dairy Queen franchises by either entity, we need not discuss this argument herein.

associated with the re-let process.  **See** N.T. 5/20/2014, pp. 48-49.  Appellant's claim lacks merit.

## 4. *The Failure to Prove Damages Claim*

Finally, Appellant claims Appellees failed to prove their damages.  **See** Appellant's Brief, p. 18.  Appellant is again incorrect.

The trial court received into evidence the lease agreement at issue in this matter as an attachment to Janet Johnson's affidavit.  **See** Affidavit of Janet Johnson, Exhibit D.  The lease outlines the required rents throughout the leasehold period.  **See id.** at 2-5.  The submitted affidavits and testimony outlined when Appellant ceased paying rent and taxes.  **See** Affidavit of Janet Johnson; Affidavit of John Slack; N.T. 5/20/2014, p. 11.  The trial court also had before it Appellees' mitigation information, discussed **supra**.  Appellant's claim that Appellees failed to prove their damages lacks merit.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2015