J-S08013-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF DIANE P. HAWKINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: MISTEY HOLMES | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 196 EDA 2025 |

Appeal from the Decree Entered December 2, 2024
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): 419 PR of 2023

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 2, 2026**

Mistey Holmes appeals from the decree entered in the Court of Common Pleas of Philadelphia County, Orphans' Court awarding her mother, Diane P. Hawkins, $126,689.18 in damages and $7,500 in attorneys' fees for Holmes' unauthorized sale of Hawkins' house. Holmes argues that the orphans' court abused its discretion in finding that Holmes sold Hawkins' house without authorization and unjustly enriched herself with the proceeds. We affirm in part, vacate in part, and remand for further proceedings.

Hawkins lived independently in her own home at 1920 Pierce Street in Philadelphia, which she bought from her grandson in 2013, until she suffered a stroke in 2021. At that time, she moved in with Holmes, and they opened a joint bank account. On October 1, 2021, Holmes, acting under a purported power of attorney agreement, sold her mother's home for $140,000.

On January 27, 2023, Hawkins sent Holmes a letter, through counsel, that revoked Holmes' authority under any previously executed power of attorney and demanded an accounting of Hawkins' financial affairs from the period of August 26, 2021 through February 28, 2022. Holmes did not file an accounting. On March 28, 2023, Hawkins filed a petition for citation to show cause why Holmes should not be directed to file an accounting pursuant to 20 Pa.C.S.A. § 5610. In her petition, Hawkins alleged that, on August 26, 2021, Holmes fraudulently induced her to sign a Durable Power of Attorney that Holmes told her was only for health care purposes. Hawkins contended that acting under her purported authority, and without Hawkins' knowledge, Holmes proceeded to sell her mother's home on October 1, 2021 for $140,000. Holmes deposited $126,689.18 of the proceeds in a joint bank account. Over the next few months, Holmes transferred all the money to her own personal bank account, including one transfer of $75,000, and never used this money for Hawkins' benefit. Based on these allegations, Hawkins raised four counts and requested that the court: (1) determine that Holmes' actions were not authorized and compel Holmes to file an accounting; (2) impose a constructive trust over Hawkins' assets that Holmes unlawfully transferred; (3) order restitution based on unjust enrichment; and (4) award attorney fees.

On June 7, 2024, the orphans' court issued a decree ordering Holmes to file an accounting within 45 days of the order. Holmes never filed an accounting, and the orphans' court issued a decree finding her in contempt of

court on September 6, 2024, and stating that a contempt hearing would take place at a later date. That same day the court issued a separate decree scheduling a hearing on the petition for November 13, 2024.

An adjudicatory hearing was held on November 13, 2024. Holmes represented herself *pro se* at the hearing. Hawkins testified on her own behalf and presented documentary evidence that included the 2013 deed to her house, the power of attorney agreement, a bank statement from the joint bank account, a certificate from the custodian of records for the joint bank account, the 2021 deed transfer, and a check deposited in the joint account signed in Hawkins' name.

Hawkins testified that while she was living with Holmes she intended to go back to her house when her health improved and that she had no intentions of selling it. **See** N.T., 11/13/24, at 30-32. Hawkins was presented with the August 2021 power of attorney agreement and testified that "[i]t don't look like my signature." **Id.** at 34. Hawkins then responded affirmatively to her counsel's leading question that Hawkins had told counsel that she signed it but was under the belief that she was signing a power of attorney only for health care purposes. **See id.** at 35. The court, seeking further clarification, interjected to question Hawkins on whether she actually signed the document.

> THE COURT: But, Ms. Hawkins, if it was for health reasons, did you sign it for health reasons?
>
> [HAWKINS]: No.
>
> THE COURT: So you never signed this document?

[HAWKINS]: No.

*Id.* at 37-38. The court further questioned her about the signature to which she responded, "it just doesn't look like my signature[,]" and "I'm not saying that . . . it's not my signature. . . . But it doesn't look like my signature." *Id.* at 40.

She testified that she never discussed selling the house with Holmes. *See id.* at 41. When she found out about the sale of the house in February 2022, she went to the bank to demand bank statements of the joint account and confronted Holmes. *See id.* at 43-45. She further testified that she never approved any of the withdrawals or transfers that Holmes made from the joint account. *See id.* at 51-59. She concluded by testifying that she was not aware of the sale of the house at the time of the October 2021 deed transfer and that she did not sign it or authorize Holmes to sign it on her behalf. *See id.* at 61-64. The court noted that it was signed in Hawkins' name and there was no acknowledgement that Holmes signed Hawkins' name acting as power of attorney. *See id.* at 62-64.

Holmes called one witness at the hearing, Gail Thomas. Thomas testified that she was Hawkins' home health care nurse for about two to three weeks. *See* N.T., 11/13/24, at 83. She testified that during that period Hawkins told her that she sold her property, and that she saw Holmes give Hawkins money when Hawkins requested it. *See id.* at 83-85.

On December 2, 2024, the orphans' court issued its decree with accompanying findings of fact and conclusions of law. The orphans' court denied the first two counts of Hawkins' petition because "a valid power of attorney was not established[.]" Decree, 12/2/24, at 1. The court granted count three and awarded Hawkins $126,689.18 based on its findings that Holmes carried out an unauthorized sale of Hawkins' house, depleted the joint bank account without Hawkins' knowledge and Holmes unjustly enriched herself with the funds. *See id.* at 1-2. Lastly, the court awarded attorneys' fees of $7,500 related to Holmes' failure to file an accounting. *See id.* at 2. Holmes, represented by counsel, appealed. Hawkins filed a court-ordered statement of errors on appeal. *See* Pa.R.A.P. 1925(b).[1] The orphans' court filed an opinion pursuant to Rule of Appellate Procedure 1925(a).[2]

_____

[1] On February 28, 2025, the orphans' court ordered Holmes to file a Rule 1925(b) statement. *See* Order, 2/28/25. Holmes attached to her brief a copy of her filed Rule 1925(b) statement, dated March 13, 2025. *See* Appellant's Brief, at Appx. A. However, it is not in the certified record provided to this Court, which, generally, would preclude our review of the statement and her appellate issues. *See Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) ("if a document is not in the certified record, the Superior Court may not consider it."); *see also Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 803 (Pa. 2007) (failure to raise claim in court-ordered Rule 1925(b) statement waives issues). Nevertheless, because it is undisputed that the statement was timely filed, and the orphans' court addressed the issues raised therein, we decline to find waiver. *See* Orphans' Court Opinion, 5/15/25, at 5-6.

[2] In its 1925(a) opinion, the orphans' court requested that the appeal be quashed because Holmes did not order a transcript of the hearing as required by Pennsylvania Rule of Appellate Procedure 1911. *See* Orphans' Court Opinion, 5/15/25, at 1 n.1. However, in this Court, Holmes filed an application

*(Footnote Continued Next Page)*

Holmes raises the following issue for our review: "Did the Orphans' Court err by ruling that a durable power of attorney was invalid, a signature on a deed was forged, and that [Holmes] converted funds belonging to her mother?"[3] Appellant's Brief, at 2.

Our standard of review of an orphans' court decree is well-established.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Est. of Rush*, 303 A.3d 491, 498 (Pa. Super. 2023) (citation and paragraph break omitted). "Because the Orphans' Court sits as the factfinder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In*

---

to correct the record to include the transcript and sought an extension of time to file her brief due to difficulty in obtaining the hearing transcript. *See* Application for Correction, 6/11/25; Application for Extension, 7/14/25. We issued a rule to show cause order for Holmes to provide documentation to this Court that she ordered and paid for the transcript. *See* Order, 7/30/25. Holmes submitted documentation and thereafter we issued an order directing the orphans' court to advise this Court of the status of the preparation of the hearing transcript. *See* Order, 9/23/25. The orphans' court filed a response to our order and the hearing transcript was filed on December 2, 2025. Thereafter, we lifted the stay of the briefing schedule and Holmes timely filed her brief. *See* Order, 12/5/25. Therefore, the hearing transcript is now a part of the certified record.

[3] Hawkins has not filed an appellate brief.

*re Est. of Rocco*, 339 A.3d 1019, 1024 (Pa. Super. 2025), *appeal denied*, ___ A.3d ___, No. 228 WAL 2025, 2026 WL 276303 (Pa. filed Feb. 3, 2026) (citation omitted).

Holmes argues that the orphans' court abused its discretion by applying the incorrect burden of proof and finding the evidence presented by Hawkins was sufficient to prove a forgery to invalidate the power of attorney agreement and the real property deed. **See** Appellant's Brief, at 6. Holmes asserts that a signed power of attorney and real property deed are presumed valid, and establishing forgery "often depends on corroborating evidence, such as testimony from handwriting experts." **Id.** at 7. Holmes claims that the orphans' court abused its discretion by relying solely on Hawkins' testimony, which was insufficient because Hawkins was incompetent and her testimony whether she signed the power of attorney was inconsistent and contradicted her claim that she signed the power of attorney agreement under the impression that it was only for health care, not financial purposes. **See id.** at 8-10.

Holmes' argument is riddled with misstatements of the law and the record. First, a witness is presumed mentally competent to testify unless the court finds that, because of a mental condition or immaturity, the witness lacks certain capacities. **See** Pa.R.E. 601(a)-(b). Whether Hawkins was mentally competent to testify is not before this Court because Holmes never raised the issue in the orphans' court. **See Lilienthal v. J.E.D. Heating &**

***Cooling, Inc.***, 315 A.3d 111, 2024 WL 807181, at \*3 (Pa. Super. filed Feb. 27, 2024) (unpublished memorandum)[4] ("Because J.E.D. did not raise an evidentiary claim in the trial court to challenge the opinion testimony of Mr. Gittinger as being incompetent under Pa.R.E. 702 and 705, we dismiss its first three appellate issue as waived."). To the extent Holmes is asserting that Hawkins' testimony was incompetent, in reality she is challenging the weight the orphans' court afforded it.

Second, it is true that Hawkins offered contradicting testimony stating that she signed the power of attorney under the impression it was only for health care purposes and that the signature on the power of attorney was not hers. ***See*** N.T., 11/13/24, at 34-35. The orphans' court recognized this and, when it explicitly asked Hawkins whether she signed the power of attorney, Hawkins said she did not. ***See id.*** at 37-40. Any inconsistent or contradictory testimony by Hawkins was for the orphans' court to consider when exercising its discretion in making credibility determinations. ***See In re Est. of Rocco***, 339 A.3d at 1024.

Third, contrary to Hawkins' assertion, "forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility." ***De Lage Landen Servs., Inc. v. Urb. P'ship, LLC***, 903 A.2d 586, 590 (Pa. Super. 2006) (citation omitted). Additionally,

_____

[4] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memorandum decisions filed after May 1, 2019 may be cited for their persuasive value.

Pennsylvania courts have consistently held that a handwriting expert is not required to establish a forgery claim and even that the fact finder is free to disregard a handwriting expert's testimony if they find contrary evidence of a layperson to be more credible. **See id.** at 591 n.8. Therefore, Hawkins' testimony itself was sufficient to establish that she did not sign the documents.

Setting aside Holmes' misstatements of law and the record, we discern no abuse of the discretion. "A cause of action for unjust enrichment may arise only when a transaction of the parties not otherwise governed by an express contract confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value." **Villoresi v. Femminella**, 856 A.2d 78, 84 (Pa. Super. 2004) (citations omitted).

> As the term unjust enrichment implies, recovery under that doctrine requires (1) an enrichment that (2) was unjust. This is a matter of equity, and, to succeed, the plaintiff must prove: (1) benefits were conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

**Wilson v. Parker**, 227 A.3d 343, 353 (Pa. Super. 2020) (citations, quotation marks, ellipses, and brackets omitted).

Based on the evidence presented, the orphans' court concluded that the power of attorney was invalid, Hawkins did not authorize the sale of her home, Hawkins' signature on the document for the sale of her house was forged, Hawkins' did not approve Holmes transferring the money to herself, and by

doing so Holmes unjustly enriched herself in the amount of $126,689.18. ***See*** Conclusions of Law, 12/2/24, at ¶¶ 1-6.

The orphans' court found Hawkins to be credible. ***See*** Findings of Fact, 12/2/24, at ¶¶ 5, 11, 14. Although Hawkins' testimony alone was sufficient, the orphans' court also based its decision on its review of the documentary evidence. ***See id.*** at ¶¶ 5-6, 15-18. Based on its findings, which were supported by the evidence, the orphans' court concluded that Holmes unjustly enriched herself from the unauthorized sale of her mother's house and the subsequent transfer of the funds to herself. Therefore, we discern no abuse of discretion or error of law with the orphans' court awarding Hawkins $126,689.18. Holmes is not entitled to relief.

Lastly, Holmes claims that the orphans' court erred in awarding attorneys' fees when Hawkins did not document the fees incurred and the orphans' court did not assess the reasonableness of the fees. ***See*** Appellant's Brief, at 13-14.

"Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award." ***Hosler v. Twedlie***, 306 A.3d 361, 380 (Pa. Super. 2023) (citation omitted). We have long held that "[u]nder the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a

clear agreement of the parties, or some other established exception." *Id.* at 379 (citation omitted).

"The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute." *In re Est. of Simpson*, 305 A.3d 176, 185 (Pa. Super. 2023) (citation omitted).

> Section 2503(7) of the Judicial Code provides that a participant in a legal proceeding may be awarded counsel fees "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S.A. § 2503(7).

> Our ability to review the grant of attorneys' fees is limited, and we will reverse only upon a showing of plain error. Plain error is found where the decision is based on factual findings with no support in the evidence or legal factors other than those that are relevant to such an award.

*Pelissero v. Seraly*, 247 A.3d 433, 437 (Pa. Super. 2021) (internal citations and brackets omitted). "In awarding attorney's fees pursuant to Section 2503(7), the trial court is required to first ma[k]e specific findings of dilatory, obdurate, or vexatious conduct." *Hosler*, 306 A.3d at 380 (citation omitted). "If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision." *Pelissero*, 247 A.3d at 438 (citation omitted).

In its decree, the orphans' court awarded "reasonable attorney fees in the amount of $7500.00 to be paid by Mistey Holmes to [Hawkins'] lawyer in compensation for legal work to track down the malfeasance here." Decree,

12/2/24, at 2. The "malfeasance" was not just the underlying fraudulent sale of Hawkins' house but also Holmes' failure to file a requested accounting. *See id.* However, the orphans' court did not specify that it was awarding attorneys' fees pursuant to Section 2503(7). Further, it did not explain what factors it considered in awarding the fees. Therefore, "[w]e are unable to discern from the court's opinion exactly what factors it found relevant and on what basis it awarded the counsel fees." *Holz v. Holz*, 850 A.2d 751, 761 (Pa. Super. 2004). Accordingly, without holding that the attorneys' fees awarded were unreasonable, we vacate the orphans' court's award of attorneys' fees and remand for the orphans' court to reconsider the amount of attorneys' fees to be awarded, explain its basis for awarding attorneys' fees, and hold any proceedings necessary for it to make its determination. *See id.* (vacating award of attorneys' fees and remanding for the trial court to reconsider the amount of attorneys' fees to be awarded).

Based on the foregoing, we affirm in part, vacate in part, and remand for proceedings consistent with this memorandum.

Decree affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/2/2026</u>